Good morning. May it please the Court, Carmen Chavez for the petitioners, Ms. Bezuer-Gonfa and her children. I wish to reserve two minutes for rebuttal. We ask this Court to reverse and vacate the BIA's decision which denied petitioner asylum and related relief of this Oromo-Ethiopian woman who was active in the OLF, had been raped in her own home by government soldiers, was later imprisoned and raped multiple times, and still later fled her country forever when she found out there was a warrant for her arrest. But for the IJ's erroneous evaluation of the facts, the BIA's abuse of discretion, and the denial of the petitioner's due process right to be heard, the petitioner's claim should have been granted because it's supported by the law and the record before this Court as to the following two issues, credibility and the new evidence presented before the BIA. First, the IJ's adverse credibility finding was not supported by the record and his reasoning was fatally flawed. The evidence the petitioner presented would compel a reasonable fact finder to reach a contrary result. Here, the petitioner's evidence was specific, direct, and concrete, and in light of the totality of the record, is credible. There is no legitimate basis for the non-credible finding that the IJ made. Let's stop you right there. Yes, Your Honor. Ms. Chavez. Didn't Mrs. and is it Mrs. Gonfa, because her husband's name is a different name, which is unpronounceable to me.  But we'll call her Gonfa. Didn't she testify at the hearing in order to show a greater case of persecution for her family and her connection with the group, which you've mentioned, the Aroma Liberation Front, that she had consciously exaggerated the time her husband had been held in prison, Absolutely, Your Honor. Are those facts right? That's right, Your Honor. And on the record, she corrected this, and she did state that she had misrepresented this. And where an applicant gives an account. Where an applicant is cross-examined and admits that what the applicant has said is concocted, that is not the basis for credibility findings to the rest of her testimony because a sinner is to be pardoned if the sin is confessed at the hearing? Is there some rule like that? Actually, Your Honor, the sin was confessed much earlier in her supplemental declaration. If you look at the record, and in this case, as in Sotonov, where an applicant gives one account of persecution, but then revises the story so as to lessen the degree of persecution he explained, rather to increase it, as she did in the supplemental declaration submitted to the court, the discrepancy generally does not support an average credibility finding. Moreover, Your Honors, this fact, the length of the husband's incarceration and whether or not she had contact with her husband, besides being corrected on the record and then through her oral testimony, this is another representation of the judge's error. Why? Because he concluded that she had misrepresented significant facts. We maintain, Your Honor, that the judge placed improper emphasis upon issues not central to her asylum claim, such as the point that was just made, Your Honors. She's claiming political persecution. Nothing is more central to her claim than political persecution, right? Liberation Front? Yes, Your Honor. The Marxists are chasing her. The the EPRDF are chasing her. Fine. Now, she says, to make my claim for political persecution all the more pungent. My husband was persecuted also. He was kept in jail for two years. But then she says, well, maybe it wasn't two years. Maybe he was let out in 91, maybe some months. And I was with him during that time. Why is that not going to the heart of the matter of her claim? It doesn't go to the heart of the matter, Your Honor. Because it was a husband? The fact remains that the husband was imprisoned. Oh. Additionally, Your Honor. An exaggeration is not basis for lack of credibility. In the sense of how long he was incarcerated, the fact remains that he was targeted by the government and that he was imprisoned for his prior position within the regime. Moreover, the heart of her claim is that she was raped in her own home while her husband was imprisoned. And later was herself imprisoned for about three months, during which time she was raped at least three times. Interrogated about her activities as a neuroma participant within the OLF. And beaten. This is the issue. This is the facts that go to the heart of her claim. And still later, when she returned to Ethiopia, she discovered that there was a warrant for her arrest, thus triggering her flight from Ethiopia in April of 1993. Your Honor, she comes clean in her testimony. She comes clean in her supplemental declaration. And she comes clean during her oral testimony. Additionally, Your Honor. The I.J. substituted the evidence of record with his own personal speculation and conjecture. Foremost, with regards to the rape. The I.J. found it implausible that the petitioner would not tell her husband, her first lawyer who was male, and anyone about the fact that she was raped by government soldiers at her home and while in prison. And this is at AR 198 and 200. The petitioner has consistently testified that to speak of this was taboo, culturally unacceptable, and something that a woman kept silent with herself over and over. Pages 359, 361, 362, and other pages. She is attempting to explain why she did not discuss the rapes in her first asylum application. And then later, includes in her supplemental declaration and in her oral testimony. She is trying to assist the court in trying to understand the cultural norms as they exist for an Ethiopian woman in Ethiopia. Moreover, someone who is a Roma. The judge dismisses this and says that it's unreasonable. States the supposed cultural excuse is not sufficient to explain petitioner's silence on this matter. This type of judgment is not a legitimate basis for an adverse credibility finding. It is something shameful and not discussed in Ethiopia as it is in many cultures, indeed even in this country. Are you familiar with, it was not cited in your brief, and we didn't get a 28J letter on it, our decision in April of 2000, excuse me, May of 2004, K-E-B-E-D-E, I'm not sure how to pronounce it, Kebede versus Ashcroft. It's a 366 F third 808 in which we specifically hold, as indeed to an Ethiopian woman, that the failure to mention it initially and mentioning a rape only later can reasonably be explained by cultural attributes. Well then that case is a case in point here. That case directly supports this particular argument. You've got a number of other credibility findings or support for the adverse credibility finding to overcome, but on that point I think you've got a case to support you. Yes, and on this point, with regards to her rape, is one of the most, is perhaps the most intimately significant in her personal history and goes to the heart of her claim for asylum and why she's afraid to go back to Ethiopia. The applicant's failure to relate her story, multiple rapes in the first application, should not be then characterized as an inconsistency. That she did not reveal this incident should not have been an inference that she was lying. What did we do with the finding that her demeanor was shifty and evasive? With regards to her demeanor, which is another aspect of trying to evaluate if a person is credible or not, I would like to point out to the court that this is a woman who has suffered tremendous past persecution and at times it was difficult for her to answer questions. However, she hung in there for two full sessions of testimony, many hours of testimony. She hung in there under extreme scrutiny of her past, of her story, of why she said this and why she said that, et cetera. And she made best attempts to try to correct herself and explain and offer a plausible explanation for her story. Okay, now you've just used up all your time. Why don't we hear from the government and then we'll give you a minute in rebuttal. Thank you, Your Honor. I had a lot to say. Well, you'll get another chance. Good morning, Your Honors. May it please the Court. I'm Jeffrey Clair, Justice Department Counsel for the Attorney General. Your Honor. Were you familiar with the Abedi case? Not specifically, Your Honor. But as you have characterized the holding, it's not a matter that's really legal holding. It's not something that we would dispute in this case. We would recognize, and I think the immigration judge recognized, that it is possible that cultural factors may lead someone not to mention a rape initially and not to report it. However, the immigration judge looked at the circumstances as to why this particular individual did not mention it. He looked at the expert psychotherapist report that was submitted and supported this contention and found that the evidence as to this particular individual did not support the contention that that is why she did not mention it. She also failed to mention it to her husband. The initial time she claimed to have been raped, when the soldiers entered her home in 1991, was not something that she had mentioned in her first asylum application, nor did she mention the fact that the soldiers had entered her home in the first instance. What other grounds does the IJ offer to support the adverse credibility finding that you would find particularly salient or useful? Well, I think the judge was particularly disturbed with the fact that she had misrepresented facts that were essential to her husband's claim at a time when she was claiming asylum based on her relationship to her husband. Her husband was a different ethnic minority. He was associated as a colonel in the Air Force with the prior regime. He had been incarcerated and released, and she claimed that her relationship, her family connection to her husband was the basis for his incarceration. Well, in that circumstance, when that's the basis of the claim, to disclose that he hasn't been in prison for almost two years, in fact that he'd been released after several months, that actually at some point shortly thereafter he was working in some capacity again as a consultant to the new regime, the judge found that that was a misrepresentation of facts that really went to the heart of her asylum claim, cast doubt on her entire credibility of all her testimony. And the judge at one point said that he would deny the application or find her incredible on that basis alone. He then went on to articulate a number of other reasons for finding the applicant incredible, including the failure to report these incidents earlier in her initial application, the fact that the husband had no knowledge of the rape, the fact that the expert testimony submitted in support of a reluctance to come forward was not based on the kind of thorough medical examination that the judge thought would be appropriate to support the reliability of the expert testimony. The judge in this regard noted in particular that although this was a report from a psychotherapist, it failed to mention in the patient's history that she'd in fact been hospitalized for depression for a number of months and treated. Well, if someone, if this is a report that purports to explain the kind of psychological factors animating someone's decision not to come forward with testimony, that's obviously something very relevant to the reliability of the expert's report. As the court knows from these cases, as the court knows from just some of the cases or the case heard prior to this one, the credibility of an applicant for asylum is often crucial to resolution of the claim. In many cases, there simply is no other evidence than the applicant's story. If the applicant misrepresents facts that are essential to the applicant's claim, the government has to have the authority and the ability to simply discount the testimony and deny the application. There is no other basis on which to judge many such claims apart from the applicant's credibility. And if the applicant lies to the government, that casts doubt on the veracity of their entire submission. Here again, the judge did not simply rely on this misrepresentation. He found aspects of the narrative told by the petitioner to be simply incredible. Though she claimed the fear of persecution after she had been released from her alleged incarceration, she had no trouble getting an exit visa and coming to the United States. She was in the United States on a visa for a full year in 1992. Apparently had made contact with an immigration lawyer because when she returned, there was the name of an immigration lawyer in her documents found on her possession. Made no application for asylum at that time. Had simply returned back to Ethiopia in 1993. Was there for several months. Asserted that she had learned that she was the subject of an arrest warrant, but nonetheless had no trouble getting an exit visa to again return to the United States. The immigration judge, in effect, considered the totality of the record beforehand and found that the narrative told by Ms. Contra simply did not make sense to him. It was simply not credible. That people who feared, had a reasonable fear of persecution, would not behave in a way that suggested they really were not more attentive and energetic to protecting their rights when they had an opportunity to do so. That she hadn't behaved with respect to her family in terms of gathering up her children and taking them with her at an earlier date in a fashion that suggested someone who was truly concerned about persecution in the future. As the court indicated in the last case, the standard of appellate review in this case is a deferential one. The court must essentially find that it is compelled to reject the immigration judge's findings of credibility. That the immigration judge's construction of the record is simply not plausible. The fact that there might be alternative explanations to why things were omitted or alternative or some basis for crediting the Allianz account of events is not sufficient to reject the immigration judge's conclusion. Mr. Clare, can you point to any evidence in the record which would sustain the IJ's finding that the demeanor of the petitioner when testifying was shifty or evasive? The evidence is principally as to demeanor and again apart from the material inconsistencies which the judge found. He recited her behavior on the witness stand. He found her to be unusually nervous and fidgety. He found that she had been playing with the equipment, that her answers were repeatedly vague and evasive and that it was difficult to extract responsive answers from her even though she apparently understood English very well and could appreciate the thrust of the questions that had been presented to her. Appellate review of a demeanor determination is necessarily difficult, I would think. The court has recognized that the immigration judge, like other finders of fact, is in the best position to evaluate the witness's behavior on the witness stand and has shown in its opinions deference for the judge's experience, familiarity with these kinds of proceedings and ability to distinguish between ordinary nervousness, which you would expect I think of most people in circumstances like that, and unusual nervousness that suggested that the witness was in fact not telling the truth. As you point out, the failure to say anything about the rape earlier in the proceeding wasn't the only thing that concerned the IJ. That's right. It's clearly an important part of it. Would there be any merit in a remand to, since the IJ didn't have the benefit of the Comedie case, to take another look at whether the credibility finding would be the same if the Comedie case had been taken into account? Your Honor, respectfully, I don't think a remand would be necessary. It would change the result and is really dictated by the circumstances of this case. This was not a judge who rejected the proposition that cultural factors might lead someone to be reluctant to report a rape. This is someone who looked at the particular circumstances of this individual, looked at the expert testimony that was submitted in the record, and found that that was not the case. If you had a judge who simply had rejected this proposition out of hand and said that cultural factors could never lead women to behave this way, that would be another matter. But that's simply not the case. On what basis do you think the judge did not accept the Comedie theory without calling it Comedie? Why didn't he accept the idea that Ethiopian women, when raped, don't tell anybody about it? Well, I think he just doubted that there had been a rape in the first instance, and he questioned the reliability of the expert witness whose testimony was submitted in the applicant's behalf. He noted in particular that for someone who purported to testify as to the applicant's psychological state, it was really quite extraordinary that he read the very brief recitation of the medical history omitted the fact that the applicant had been hospitalized and treated for depression. Your Honor, I see my time is up. I did want to just direct the Court to one portion of the record in response to my opposing counsel's contention. The supplemental declaration where her ‑‑ she amends her representations about her ‑‑ the length of her husband's incarceration. That's at page 959 of the record. It is dated in December 1999. I'm sorry. The page again? 959. 959 of the AR? Administrative record. Yes, Your Honor. And it's dated December 1999. I note I do not have a complete answer to the Court's question. I note that the hearings commenced in October of 1999. I do not know whether the testimony was solicited before or after the December 1999. Okay. Thank you very much. Thank you. Would you like a minute? Oh, I thought I had two minutes. Well, let's hear what you have to say. Okay. In response, in regards to the psychological evaluation that was conducted on the petitioner, that is another example of what happened in this Court, is that the immigration judge dismissed the psychological expert's opinion that the petitioner had, quote, appeared physically frightened in talking about the incidents of her multiple rapes. She was also humiliated to discuss it with the interviewer, the psychologist. He should have considered it, especially having the knowledge that the petitioner had been hospitalized in the mental hospital in 1992 after having had a nervous breakdown, not too soon after the incidents that we're discussing. This is something that was a strong indicator that was completely dismissed. And it is another example of how the I.J., instead of taking into account that the evidence he just took into account the evidence that detracted from the petitioner's claim, and that supported his foregone conclusion that the petitioner was fabricating her story, instead of taking all the evidence and evaluating its entirety. With regards to the motion for new evidence, what hasn't been expressed in this argument today is the reason that this kind of evidence was not previously available is reflected in the declarations by Lisa Kale of the incredible fear that the family had to even discuss it in driving by the buildings. It is in the declarations that they indicated where the buildings were in a very secretive fashion. The amount of fear and the insecurity within the country led to the fact that this kind of evidence was not previously available and had to take someone from the United States to go over there and to literally dictate a declaration and to make observations, first-hand observations. That's what it took. And regardless of the number of years, we have to remember, for instance, Mr. Rake, she wasn't even able to talk about it until much later. Okay. Thank you. We gave you two minutes and a little bit. Thank you. Thank you very much. Thank both sides for your argument. The case of Gonza versus Gonzales is now submitted for decision. The next case on the argument calendar is Terefe, I'm not sure I'm pronouncing it correctly, versus Gonzales.
judges: T.G. Nelson, W. Fletcher, Bea